**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: | Chapter 7 |
| ITT EDUCATIONAL SERVICES, INC., *et al.*, [1] | Case No. 16-07207-JMC-7A |
| Debtors. | **Jointly Administered** |
| DEBORAH J. CARUSO, TRUSTEE FOR ITT EDUCATIONAL SERVICES, INC., *et al.*, | Chapter 7 |
| Plaintiff, | Adversary Proceeding No. _____ |
| -against- | |
| SECURITIES AND EXCHANGE COMMISSION, CONSUMER FINANCIAL PROTECTION BUREAU, MAURA T. HEALEY, in her capacity as the Attorney General of the Commonwealth of Massachusetts, HECTOR H. BALDERAS, JR., in his capacity as the Attorney General of the State of New Mexico, TERRI L. BURTON, RAYMOND BRINEY, RODFORD SEABOLT, DALISHA K. ALDRIDGE, KAYLA SCIFRES, THERESA WINTERS, NICOLE AKERLEY, and JOHN/JANE DOES 1-10. | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Deborah J. Caruso, the chapter 7 trustee (the "Trustee") in the chapter 7 cases of ITT

Educational Services, Inc. ("ITT"), ESI Service Corp. ("ESI") and Daniel Webster College, Inc.

("Webster College" and, together with ITT and ESI, the "Affiliated Debtors") and as plaintiff in

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers, are ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].

the above-captioned adversary proceeding, by counsel, hereby alleges for her Complaint, upon knowledge of her own acts and upon information and belief as to all other matters, as follows:

**SUMMARY OF ACTION**

1.        This is an adversary proceeding seeking declaratory and injunctive relief to stay two forms of actions: (i) actions brought by certain governmental units against the Affiliated Debtors and (ii) actions against the Affiliated Debtors' former directors and officers that could implicate claims owned by these chapter 7 estates or impair the estates' interest in available insurance proceeds that constitute property of these estates.

2.        **<u>Stay of Government Actions</u>**.  The Trustee seeks to stay four lawsuits (as identified more fully below as the Government Actions) initiated by certain state actors and/or governmental agencies against ITT.  The Government Actions assert claims for injunctive relief and various forms of monetary relief, such as disgorgement, civil penalties, and restitution against some or all of the Affiliated Debtors.  The Trustee believes the Government Actions are stayed pursuant to section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and seeks a declaration to that effect, including a declaration that the police power exception of section 362(b)(4) of the Bankruptcy Code is not applicable.

3.        If the Government Actions, or any portion of them, are not subject to the automatic stay, then the Trustee seeks immediate declaratory and injunctive relief staying the Government Actions, through the date these chapter 7 cases are closed, pursuant to sections 105, 362, 541, and 704 of the Bankruptcy Code to permit the Trustee to marshal and protect the property of the Affiliated Debtors' estates (pursuant to section 541 of the Bankruptcy Code) in furtherance of her duties as Trustee (as set forth in section 704 of the Bankruptcy Code).[2]

---

[2] In the accompanying *TRUSTEE'S MOTION TO STAY, OR IN THE ALTERNATIVE, FOR INJUNCTIVE RELIEF ENJOINING, PROSECUTION OF PENDING LITIGATION AGAINST DEBTORS*, the Trustee is seeking an

4.     Further, in connection with any stay of the Government Actions, the Trustee requests declaratory and injunctive relief preventing any person, including any Government Actor (as defined below), from responding to inquiries from third parties that implicate the Affiliated Debtors or to turnover or otherwise disclose any documents provided to the Government Actors by the Affiliated Debtors, including responding to Freedom of Information Act ("FOIA") requests, and similar requests from third parties, including other regulators (any such request, a "Third Party Debtor Disclosure Request"), during the pendency of such stay.

5.     Application of the automatic stay to the Government Actions is necessary to allow the Trustee to focus her efforts on stabilizing these estates and preserving the Affiliated Debtors' assets.  These are not typical chapter 7 cases; ITT represents the largest chapter 7 case of any for-profit educational institution.  ITT's prepetition operations were located in nearly 140 locations in almost 40 states.  The primary assets of ITT are comprised of real estate holdings and accounts receivable, as well as hundreds of thousands of documents, including student records (including student transcripts, financial aid information, medical records, and other documents, some of which may contain sensitive personally identifiable information).  These assets are located throughout the United States at the various locations where ITT operated.  The Trustee anticipates the Debtors have nearly 200,000 creditors, including approximately 40,000 students who were enrolled in the Debtors' academic programs as of the commencement of these cases, and nearly 8,000 employees.

6.     Continuation of the Government Actions at this time threatens the success of these chapter 7 cases.  The Trustee has a massive task ahead of her, and she cannot divert her limited time and estate resources to addressing litigation issues and discovery requests raised in

injunction for 120 days from the Petition Date (as defined herein), which the Trustee believes is the amount of time necessary to conduct her initial evaluation and assessment of the Actions (as defined herein).

3

the Government Actions where there is no immediate, continuing threat to public safety or welfare.  In short, since ITT and its Affiliated Debtors have ceased all operations, there is no immediate threat of current or future harm.  Given ITT's shutdown, no further "regulatory activity" relating to ITT is necessary or required on an immediate basis.  The Trustee recognizes the claims need to be defended or liquidated, and will work with the parties on the form of an appropriate protocol to do so, but now is not that time when there are more critical and urgent matters to address – such as preservation of documents (including student and financial records).

7.      In short, the Trustee believes the Government Actions are stayed because the police power exception of section 362(b)(4) of the Bankruptcy Code, or any other exception, is not applicable.  In the alternative, the Trustee seeks immediate declaratory and injunctive relief pursuant to sections 105(a), 362, 541, and 704 of the Bankruptcy Code staying the Government Actions.

8.      **Stay of the D&O Actions.**  Additionally, the Trustee requests that the automatic stay be extended to stay two actions (as identified more fully below as the D&O Actions) against the Affiliated Debtors' former directors and officers.  Continuation of the D&O Actions outside of these bankruptcy cases threatens to harm these estates.  The Trustee is investigating whether the estates have claims against the former directors and officers, and requires time to evaluate any such claims and the impact that the D&O Actions may have on such claims.  Moreover, if the D&O Actions continue, they will deplete insurance policy coverage in which these estates have an interest.  Further, if the D&O Actions proceed, these estates may face indemnification claims from the Affiliated Debtors' former directors and officers.  Finally, if the D&O Actions continue against the Affiliated Debtors' former directors and officers, the Trustee may be forced to immediately address burdensome discovery requests.

4

9.      With respect to both the Government Actions and the D&O Actions (collectively, the "Actions"), the Trustee requires the benefits of a stay to fulfill her statutory duties as a chapter 7 trustee, to protect the property of these estates from piecemeal dissipation, and to focus her attention on stabilizing these estates in the critical first months of these cases.

10.      In either case, the Trustee seeks a stay of the Actions during the pendency of this adversary proceeding, without prejudice to the rights of any party to seek relief from the stay.

## THE PARTIES

11.      Plaintiff  Deborah J. Caruso is the chapter 7 trustee appointed in the Affiliated Debtors' chapter 7 cases with her principal executive office located at 135 N. Pennsylvania Street, Suite 1400, Indianapolis, Indiana 46204.

12.      Defendant Securities and Exchange Commission ("SEC") is a federal agency headquartered at 100 F Street, NE, Washington, D.C 20549.

13.      Defendant Consumer Financial Protection Bureau ("CFPB") is a federal agency headquartered at 1700 G Street, N.W., Washington, D.C. 20552.

14.      Defendant Maura T. Healey is the Attorney General for the Commonwealth of Massachusetts.  Defendant Healey's principal executive office is maintained at One Ashburton Place, Boston, Massachusetts 02108.

15.      Defendant Hector H. Balderas, Jr., is the Attorney General for the State of New Mexico.  Defendant Balderas' principal executive office is maintained at 408 Galisteo Street, Villagra Building, Santa Fe, New Mexico 87501.

16.      Defendant Terri I. Burton is a natural person residing in the State of Kentucky and currently resides in Jefferson County, Kentucky.

17.      Defendant Raymond Briney is a natural person residing in the State of Kentucky and currently resides in Oldham County, Kentucky.

5

18.     Defendant Rodford Seabolt is a natural person residing in the State of Kentucky and currently resides in Spencer County, Kentucky.

19.     Defendant Dalisha K. Aldridge is a natural person residing in the State of Kentucky and currently resides in Oldham County, Kentucky.

20.     Defendant Kayla Scifres is a natural person residing in the State of Kentucky and currently resides in Spencer County, Kentucky.

21.     Defendant Theresa Winters is a natural person residing in the State of Kentucky and currently resides in Jefferson County, Kentucky.

22.     Defendant Nicole Akerley is a natural person residing in the State of Kentucky and currently resides in Jefferson County, Kentucky.

23.     Defendants John/Jane Does 1-10 are various federal, state, local governmental units, and/or natural persons that have asserted claims against the Affiliated Debtors and/or their former directors and officers and for which such claims implicate the Affiliated Debtors' D&O Policies (as defined herein).  The Trustee will seek leave of the Court to amend this complaint to reflect their true names when they have been ascertained.

## JURISDICTION AND VENUE

24.     This adversary proceeding is commenced pursuant to sections 105(a), 362, 541, and 704 of the Bankruptcy Code, Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, and Local Rule 7065-2 of the United States Bankruptcy Court for the Southern District of Indiana.

25.     The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

26.     Each count of this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

6

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1409 on account of the Debtors' bankruptcy cases under chapter 7 of the Bankruptcy Code.

## RELIEF REQUESTED

28.     By this Complaint, the Trustee seeks (i) a declaratory judgment pursuant to section 362 of the Bankruptcy Code that the automatic stay applies to the Government Actions and the exception contained in section 362(b)(4) of the Bankruptcy Code does not apply to the Government Actions; (ii) in the alternative, a declaratory judgment pursuant to sections 105, 362, 541, and 704 of the Bankruptcy Code extending the automatic stay under sections 362(a)(1),(3), and (6) of the Bankruptcy Code to the Government Actions; (iii) in either case, a declaration and injunction preventing any person, including any Government Actor, from responding to Third Party Debtor Disclosure Requests during the pendency of any such stay; (iv) a declaratory judgment pursuant to section 362 of the Bankruptcy Code that the automatic stay applies to the D&O Actions; and (v) in the alternative, a declaratory judgment pursuant to section 105(a) of the Bankruptcy Code extending the automatic stay under sections 362(a)(3) of the Bankruptcy Code to the D&O Actions.

## FACTUAL BACKGROUND

A.     **The Affiliated Debtors' Business.**

29.     ITT is a publicly traded Delaware corporation.  Prior to filing for bankruptcy protection on September 16, 2016 (the "Petition Date"), the Affiliated Debtors were leading proprietary providers of postsecondary degree programs in the United States.

30.     As of June 30, 2016, the Affiliated Debtors offered (a) master, bachelor, and associate degree programs to approximately 40,000 students; and (b) short-term technology and business learning solutions to career advancers and other professionals through ITT's Center for Professional Development.

7

31.    As of June 30, 2016, the Affiliated Debtors had 137 campus locations in 39 states. In addition, the Affiliated Debtors offered one or more of their online programs to students located in all 50 states and the District of Columbia.  All of their campus locations were authorized by the applicable education authorities of the states in which they operate, and were accredited by an accrediting commission recognized by the U.S. Department of Education (the "DOE").

**B.    Regulators and State Attorneys Generals Investigate and Bring Suit Against ITT.**

32.    Prior to the Petition Date, ITT received civil investigative demands ("CIDs") from federal and state judicial and regulatory entities, including the Department of Justice, the CFPB, and the Attorneys General of Arkansas, Arizona, Colorado, Connecticut, the District of Columbia, Hawaii, Idaho, Iowa, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Carolina, Oregon, Pennsylvania, Tennessee, and Washington.  These CIDs contain broad requests for information and production of documents relating to ITT's students and practices.

33.    On February 26, 2014, the CFPB filed a complaint against ITT in the United States District Court for the Southern District of Indiana, styled *Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, 1:14-cv-00292 (the "CFPB Action").  The CFPB Action asserts that ITT violated the Consumer Financial Protection Act and the Truth in Lending Act in connection with its private education loan programs.  The CFPB action against ITT seeks equitable relief, restitution to affected consumers, injunctive relief, disgorgement, rescission, civil penalties, and costs.

34.    On March 6, 2015, the court overseeing the CFPB Action issued an order granting ITT's motion to dismiss as to the Truth in Lending Act claim, but denied the motion as to all other claims.  The Seventh Circuit denied ITT's appeal of the motion to dismiss decision on June 13, 2016.  The CFPB Action is currently in the discovery phase, and trial is set for January 22,

2018.  On October 3, 2016, following a telephonic status conference in the CFPB Action, United States Magistrate Judge for the Southern District of Indiana Tim A. Baker ordered that "[T]he parties shall file a status report promptly after the bankruptcy trustee makes a determination as to whether the ITT estate will continue to defend this lawsuit.  No motions to compel shall be filed prior to November 2, 2016, and counsel is encouraged to contact the Magistrate Judge to help narrow/resolve any discovery dispute prior to filing any motion to compel."

35.     On February 27, 2014, the New Mexico Attorney General filed a complaint against ITT in the District Court of New Mexico, styled as *State of New Mexico, ex rel. Gary K. King, Attorney General v. ITT Educational Services, Inc., et al*, D-202-CV-2014-01604 (the "New Mexico Action").  The New Mexico Action seeks:

- declaratory relief that ITT's arbitration agreements with students are not enforceable;

- preliminary and permanent injunctive relief prohibiting ITT from enforcing illusory or unconscionable terms of any agreement or entering into new agreements with consumers, or engaging in conduct that violates New Mexico's Unfair Practices Act or other law;

- disgorgement under an unjust enrichment theory;

- civil penalties of $5,000/violation under the Unfair Practices Act;

- restitution under the Unfair Practices Act; and

- civil penalties of $500/day for violations under New Mexico Post-Secondary Educational Institution Act.

36.     On December 8, 2015, the court overseeing the New Mexico Action denied ITT's motion to dismiss the New Mexico Action.  The New Mexico Action is currently in the discovery phase.  In addition, certain rulings in the New Mexico Action are currently on appeal.

37.     On May 12, 2015, the SEC filed a civil enforcement action against ITT and certain of its officers in the United States District Court for the Southern District of Indiana,

styled as *United States Securities and Exchange Commission v. ITT Educational Services, Inc., et al.*, 1:15-cv-00758 (the "<u>SEC Action</u>").  The SEC Action involves ITT's disclosures regarding its private education loan programs, and it asserts claims under Sections 10(b), 13(a) and 13(b)(2) of the Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-1, 13a-11 and 13a-13 promulgated thereunder, as well as Section 17(a) of the Securities Act.  The SEC Action seeks:

- declaratory relief that ITT and its co-defendants committed the securities violations alleged in the complaint;

- injunctive relief permanently restraining ITT and its co-defendants from violating the federal securities laws;

- an order that ITT's co-defendants be permanently prohibited from acting as an officer or director of any public company;

- disgorgement, with pre- and post-judgment interest;

- civil money penalties, with post-judgment interest; and

- disgorgement of ITT's co-defendants' bonuses, incentive-based and equity-based compensation, and/or profits realized from their sale of ITT stock.

38.    On July 17, 2015, ITT filed an answer to the complaint in the SEC Action, and the case is now in the discovery phase.  A trial is scheduled for October 16, 2017.

39.    On March 31, 2016, the Commonwealth of Massachusetts (together with the State of New Mexico, the "<u>State Actors</u>" and, together with the CFPB and SEC, the "<u>Government Actors</u>") filed a complaint against ITT, styled *Commonwealth of Massachusetts v. ITT Educational Services, Inc.*, Sup. Ct. 16-04111 (the "<u>Massachusetts Action</u>" and, together with the New Mexico Action, the "<u>State Actions</u>").  The Massachusetts Action seeks:

- injunctive relief prohibiting ITT from: (i) making false/misleading representations regarding, or failing to disclose material information regarding, job placement rates, earnings/opportunities available to

students/graduates, nature of its educational programs, and financial aid, and (ii) steering private loans to student borrowers;

- restitution to all current and former Computer Network Systems program students (including tuition); and

- civil penalties of $5,000/violation.

40.     ITT filed a motion to dismiss the Massachusetts Action on July 22, 2016, and the matter is fully briefed.

41.     The State Actions, SEC Action, and CFPB Action (collectively, the "Government Actions") are currently pending; none have been administratively closed as of the Petition Date.

**C.     The Affiliated Debtors' D&O Insurance Policies.**

42.     The Affiliated Debtors carry the following four liability insurance policies that provide coverage for the Affiliated Debtors and their current and former directors and officers for certain actions brought against them (collectively, the "D&O Policies"): Federal Insurance Company Executive Protection Portfolio Policy [Policy No. 8153-1288], which carries a $15 million yearly limit; (b) the Illinois National Insurance Company Excess Edge Policy [Policy No. 01-245-61-65], which carries a $10 million yearly limit; (c) the XL Specialty Insurance Company Cornerstone A-Side Management Liability Policy [Policy No. ELU143403-16], which carries a $10 million yearly limit; and (d) the Freedom Specialty Insurance Company Excess Policy [Policy No. XMF1602247], which carries a $5 million yearly limit.

43.     Of the aggregate $40 million in coverage provided by the D&O Policies, $25 million is available to the Affiliated Debtors directly for liability associated with securities claims and any indemnity the Affiliated Debtors pay to or for the benefit of directors and officers.

44.     Any claim against the D&O Policies that is paid decreases the remaining coverage available to all insureds, including the Affiliated Debtors.  In other words, if the D&O Policies

pay for defense costs in an action against a director, such paid amounts decrease the overall amount under the policy available to the Affiliated Debtors, even if they were entirely uninvolved in the action.

**D.     Certain Parties Bring Suit Against the Affiliated Debtors and their Former Directors and Officers.**

45.     At least two lawsuits are pending against a director or officer (the "Non-Debtor Insiders") of the Affiliated Debtors.

46.     The SEC named ITT's former chief executive officer and ITT's former chief financial officer as defendants in the SEC Action.  As discussed above, the SEC seeks, among other things, the following relief against the Non-Debtor Insiders:

- declaratory relief that the Non-Debtor Insiders committed the securities violations alleged in the complaint;

- disgorgement of the Non-Debtor Insiders' bonuses, incentive-based and equity-based compensation, and/or profits realized from their sale of ITT stock; and

- an order that the Non-Debtor Insiders be permanently prohibited from acting as an officer or director of any public company.

47.     In 2013, certain private individuals brought suit against ITT in the Kentucky Court of Justice, styled *Burton, et al. v. ITT Educational Services, Inc., et al.*, assigned case number 13-CI-004839 (the "Kentucky Action" and, together with the SEC Action, the "D&O Actions").  The Kentucky Action asserts claims of fraud, negligence, breach of contract, violation of Kentucky consumer protection law, unjust enrichment, and violations of Kentucky nursing regulations.  The Kentucky Action has been expanded to include claims against ITT's former chief executive officer, who is covered under one or more of the D&O Policies, and four other employees who may or may not have insurance.  The defendants' motion to compel arbitration is currently pending.

**E.      The Bankruptcy Cases.**

48.      In August of 2016, the DOE prohibited ITT from enrolling new students using federal financial aid funds.  Shortly thereafter, the Affiliated Debtors' prepetition secured lender froze the Affiliated Debtors' access to funding.  The Affiliated Debtors attempted to consensually resolve the dispute with their lender and the regulators but were unsuccessful. Without access to cash, the Affiliated Debtors faced a severe liquidity crisis.

49.      The Affiliated Debtors announced on September 6, 2016, that they would permanently discontinue academic operations.

50.      On September 7, 2016, the Affiliated Debtors' secured lender swept approximately $16 million that remained in the Affiliated Debtors' accounts.

51.      Without any immediate source of funding, the Affiliated Debtors filed their chapter 7 cases on the Petition Date.

52.      On the Petition Date, the Trustee was appointed as the chapter 7 trustee in each of the Affiliated Debtors' cases pursuant to section 701(a)(1) of the Bankruptcy Code.

53.      The Trustee and her team of professionals are systematically assembling and analyzing the Affiliated Debtors' records in an effort to locate the Affiliated Debtors' assets and liabilities so that the Trustee can expeditiously carry out her duties.  This process is complicated as the Affiliated Debtors have assets located in at least 37 states, and books and records (including student records) located throughout the country, and complicated insurance, employee, and tax obligations.

54.      The Trustee is in the process of recovering all of the Affiliated Debtors' computer servers and preserving and recovering all of the Affiliated Debtors' documents, including student transcripts, financial aid information, medical records, and other documents, some of which may contain sensitive personally identifiable information.  The Trustee is also in the process of

identifying a database vendor to image and catalogue the documents. As reported to the Court, Parchment, Inc. ("Parchment") was retained prior to the Petition Date to image all student transcripts from 2001 to the present, and will provide access to students upon request at Parchment's website within 7-10 days of receiving such documents. Parchment's work is ongoing. [*See* ECF No. 173] Further, the Trustee is considering establishing a database, accessible to all parties in interest (subject to applicable privacy and privilege concerns), which will be searchable, and will be centralized depository for all of the Debtors' documents.

55.     Much progress has been made, but the foregoing represents only a fraction of the immediate tasks and issues that the Trustee faces. The Trustee's compilation of student records is particularly difficult, as it involves accumulating data from ITT's central database plus data housed on ITT's servers in at least 139 locations.

56.     In addition, the Trustee is attempting to create a protocol for addressing the Affiliated Debtors' accounts receivable. Many of ITT's former students had public and/or private educational loans to finance their tuition, and repayment of those loans is ongoing. The Trustee is in the process of evaluating the various loan programs in which ITT participated (including the private loan programs). The receivables will be held in a designated, segregated Trustee account. Additionally, the Trustee is working to identify and retain a loan servicer to keep track for all incoming accounts receivable and outstanding student loan balances.

57.     On September 23, 2016, the State Actors filed a motion (the "Stay Application Motion") in the Affiliated Debtors' cases for a determination that the automatic stay, as provided in section 362(a) of the Bankruptcy Code, does not apply to the State Actions under section 362(b)(4). The Trustee filed an objection to this motion on September 30, 2016.

58.    At a hearing held on October 4, 2016, the Court declined to grant the Stay Application Motion, without prejudice to the State Actors' right to file additional pleadings on the merits or to request narrower relief.[3]

**F.    FOIA Requests.**

59.    On September 30, 2016, the Trustee received notice that a news organization filed a FOIA request against the CFPB seeking certain documents from the CFPB (the "FOIA Request").  Counsel to the CFPB, recognizing that documents responsive to the FOIA Request would include ITT's communications with the CFPB (including materials produced to the CFPB identified with a request that such production be excluded from any FOIA request), notified counsel to ITT in the CFPB Action, who forwarded the information to the Trustee.  The CFPB has not made clear to the Trustee how it intends to respond to the FOIA Request.  While the Trustee has not had time to evaluate and review the contents of this threatened production, the Trustee believes such information constitutes property of these estates and has informed counsel to the CFPB that the Trustee objects to its release on the grounds that such release would violate the automatic stay.  ***This is exactly the type of action the Trustee seeks to enjoin until she can properly evaluate the pending Actions and estates.***

**G.    Continuation of the Actions Will Be Detrimental to these Chapter 7 Estates.**

60.    If the Actions continue and are not stayed or enjoined, the Affiliated Debtors' estates will be harmed and the Trustee's efforts to fulfill her statutory duties will be jeopardized.

61.    *First*, the Trustee is currently undertaking the task of assessing all of the Affiliated Debtors' assets.  Notwithstanding the chapter 7 nature of these cases, the Trustee anticipates there may be a meaningful recovery for unsecured creditors.  However, the assets and

---

[3] In particular, the Court stated that it believed "pursuing claims for monetary recovery in the form of either restitution or the assertion of . . . monetary penalties . . . are stayed and that actions to pursue those types of claims are . . . violative of the stay."  Transcript of Oct. 4, 2016 Hrg., at 20.

property of the estates are widespread, and the Trustee needs to focus her time and the limited resources of these estates to marshalling and preserving the Affiliated Debtors' assets at this early and critical point in these cases.

62.     *Second*, the Debtors' records, including educational and financial aid records of ***potentially hundreds of thousands of students***, must be gathered and preserved.  It is imperative that these student records do not fall into the hands of unauthorized third parties (such as landlords, or shippers, or other individuals), who will not or cannot protect the information – or may prevent or delay the Trustee from gaining access to the information.  The documents could end up in the possession of one regulator, or such regulator's agent, who may not cooperate with the Trustee or other parties in interest.  Many of these documents contain highly sensitive information, including financial, health, and personally identifiable data about ITT's former students, and as such, their distribution must be protected and controlled in order to safeguard that information.

63.     *Third*, the Trustee is also involved in evaluating the pending claims against the Affiliated Debtors, including the Actions.  The Actions seek determinations that can have an adverse impact on the estates, including the Affiliated Debtors' receivables and potential claims against the Non-Debtor Insiders that belong to the estates, all before the Trustee has had an opportunity to fully evaluate and develop the estates' position.

64.     *Fourth,* the Trustee will face significant discovery burdens that will serve as distractions from her liquidation efforts.  The CFPB, SEC, and New Mexico Actions are in the discovery phase, and the plaintiffs in those actions have served multiple document requests on ITT, respectively.  The SEC Action and the CFPB Action are also set for jury trials, beginning October 16, 2017 and January 22, 2018, respectively.  Complying with the discovery burdens in

the Actions, as well as preparing for and attending status conferences and other pre-trial requirements, will necessarily impose on the Trustee's efforts to oversee the bankruptcy. If these actions are not stayed, they will dramatically increase administration costs for these estates.

65.     *Fifth*, defense costs of the Non-Debtor Insiders will continue to deplete the amount of remaining proceeds under the D&O Policies. If the D&O Actions are not stayed against the Non-Debtor Insiders, discovery will continue and the actions will proceed to trial, potentially exhausting the D&O Policies before the Trustee can liquidate the Affiliated Debtors' assets for the benefit of their creditors.

66.     *Sixth*, to the extent that any third parties seek information from the CFPB, the SEC, or the State Actors regarding their communications with the Debtors, or documents that the Debtors turned over to them prior to the Petition Date, such as the FOIA Request, such requests would impermissibly threaten the property of the estate. For example, such information could contain student information (names, addresses, and other data), or protected financial information, or other valuable information.

## COUNT I

(Declaratory Judgment Applying Automatic Stay to Government Actions)

67.     The Trustee restates and realleges the allegations contained in paragraphs 1 through 66 above, as if fully set forth herein.

68.     Section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1), provides in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of – (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to

17

recover a claim against the debtor that arose before the commencement of the case under this title.

69.    The Government Actions are judicial actions commenced against ITT and/or the Affiliated Debtors, or is an action to recover a claim against ITT and/or the Affiliated Debtors that arose before the commencement of these chapter 7 cases.

70.    Section 362(a)(3) of the Bankruptcy Code operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

71.    The damages, restitution, and other forms of monetary relief sought by the Government Actors are acts to obtain possession of property of the Affiliated Debtors' estates or acts to exercise control over property of the estates.

72.    Section 362(a)(6) of the Bankruptcy Code operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(6).

73.    The damages, restitution, and other forms of monetary relief sought by the Government Actors are acts to collect, assess, or recover a claim against the Affiliated Debtors that arose before the Petition Date.

74.    Prosecution of the Government Actions are each subject to the automatic stay of section 362 of the Bankruptcy Code.

75.    Section 362(b)(4) of the Bankruptcy Code provides that the filing of a petition does not operate as a stay under sections 362(a)(1), (3), or (6) of "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power, including the enforcement of a judgment other than a

money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

76.     The Government Actions do not constitute actions to enforce any police or regulatory power within the meaning of section 362(b)(4) of the Bankruptcy Code.

77.     Pursuant to section 362(a) of the Bankruptcy Code, the Trustee is entitled to a declaration that the Government Actions are subject to the automatic stay.

## COUNT II

(Injunctive Relief Extending Automatic Stay to the Government Actions)

78.     The Trustee restates and realleges the allegations contained in paragraphs 1 through 77 above, as if fully set forth herein.

79.     The Trustee seeks a preliminary and permanent judgment staying the continuation of the Government Actions through the date these chapter 7 cases are closed, pursuant to sections 105(a), 362, 541, and 704 of the Bankruptcy Code.

80.     Extension of the stay is warranted because the Government Actions are judicial actions commenced against ITT and/or the Affiliated Debtors, or is an action to recover a claim against these estates that arose before the commencement of these chapter 7 cases.

81.     The property subject to the Government Actions is property of the Affiliated Debtors' estates, pursuant to section 541 of the Bankruptcy Code, which includes all legal or equitable interests of the debtor in property as of the commencement of the case.

82.     Extension of the stay is warranted because continuation of the Government Actions would permit the Government Actors to pursue actions against property of the Affiliated Debtors' estates.

83.     If the Government Actions are allowed to continue, property of these estates may be removed from the Affiliated Debtors' estates, prejudicing the Affiliated Debtors' creditors and impairing recoveries for creditors.

84.     Extension of the stay is additionally warranted because continuation of the Government Actions could diminish the size of the Affiliated Debtors' estates, harming all creditors.

85.     Extension of the stay is also warranted because continuation of the Government Actions jeopardizes the Trustee's efforts to marshal, assess, and preserve estate assets, and to otherwise fulfill her duties under section 704 of the Bankruptcy Code, thwarting the Congressional purpose of providing the Trustee with a breathing spell from litigation pressures.

86.     Section 704 of the Bankruptcy Code directs the Trustee to "collect and reduce to money *the property of the estate* for which the trustee serves, and *close such estate as expeditiously as is compatible with the best interests of parties in interest*."  11 U.S.C. § 704(a)(1) (emphasis added).

87.     Section 704 of the Bankruptcy Code directs the Trustee to:

(a)     "be accountable for all property received;"
(b)     "investigate the financial affairs of the debtor;" and
(c)     "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

11 U.S.C. § 704(a)(2), (4), and (7).

88.     If the Government Actions are allowed to continue, however, the Trustee's ability to perform her statutory duties in an expeditious manner is imperiled, as the Government Actions will necessarily hinder the liquidation process and produce delays.

89.     Extension of the stay is further warranted because continuation of the Government Actions would expose the Trustee to burdensome discovery obligations that would

distract estate professionals from their primary responsibility of identifying, collecting, and distributing estate property.

90.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

91.     Relief under section 105 of the Bankruptcy Code is particularly appropriate in a chapter 7 case when necessary to protect a Trustee's ability to effectively liquidate through marshalling, assessing, and preserving the property of the Affiliated Debtors' estates.

92.     An injunction may be granted if the following factors are present: (i) a threat of irreparable harm, (ii) balance of the hardships weights in favor of the Trustee, (iii) a likelihood of success on the merits, and (iv) furtherance of public interest.

93.     The likelihood of irreparable harm to the Trustee in the absence of injunctive relief far outweighs any harm to the parties in the Government Actions.  If the Government Actions are not enjoined, the Affiliated Debtors' estates will likely suffer harm and the Trustee's liquidation efforts will be threatened, including:

(i)     The risk that contract rights which are property of the estates are adjudicated outside the bankrupt court for the benefit of particular creditors rather than the estates as a whole;

(ii)    The risk that continuation of the Government Actions will result in a depletion of assets of the Affiliated Debtors' estates and a dramatic increase in administration costs for these estates; and

(iii)   The risk that the Trustee will face burdensome discovery and potentially compel compliance with outstanding, prepetition investigative demands in multiple jurisdictions that will distract the Trustee and estate professionals from administering these estates, including the ability to marshal, assess, and preserve estate property.

94.     The Government Actors will suffer little if any harm if the Government Actions are enjoined as the Government Actors will retain their rights to (i) seek relief from the stay in

21

accordance with applicable provisions of the Bankruptcy Code, and (ii) investigate and liquidate their claims through the chapter 7 process.  In contrast, continuation of the Government Actions would force the Trustee to engage professionals to attend hearings and status conferences in multiple jurisdictions across the United States, resulting in judicial inefficiencies, increased costs to the estates, and distracting the Trustee from the liquidation process.

95.     There is a substantial likelihood that the Trustee will be able to successfully marshal and liquidate the Affiliated Debtors' assets in an efficient manner that yields a recovery for creditors if the Government Actions are enjoined.

96.     The injunctive relief requested herein will serve the public interest by promoting compliance with the Congressional purpose of the automatic stay by protecting the property of the estates from piecemeal dissipation and by providing the Trustee with a breathing spell to assess, marshal, and liquidate the Affiliated Debtors' assets.

97.     Based on the foregoing, the Trustee seeks a preliminary and permanent injunction extending the automatic stay under sections 105(a), 362, 541, and 704 of the Bankruptcy Code to the continuation of the Government Actions.

## COUNT III

(Declaratory and Injunctive Relief from Disclosures to Non-Debtors)

98.     The Trustee restates and realleges the allegations contained in paragraphs 1 through 97 above, as if fully set forth herein.

99.     The Trustee seeks a declaration preventing any person, including any Government Actor, from responding to Third Party Debtor Disclosure Requests during the pendency of any stay applicable to any Affiliated Debtor's estate.

100.     Any information provided by the Affiliated Debtors to the Government Actors constitute property of the estate, and any Third Party Debtor Disclosure Request seeking the

turnover or disclosure of such information is an act to obtain possession of property of the Affiliated Debtors' estates or acts to exercise control over property of the estates within the meaning of section 362(a)(3) of the Bankruptcy Code.

101.     Third Party Debtor Disclosure Requests that implicate the Affiliated Debtors or any documents provided to the Government Actors by the Affiliated Debtors in connection with any Government Actions, including FOIA Requests and similar requests from third parties, including other regulators, are each subject to the automatic stay of section 362 of the Bankruptcy Code.

102.     To the extent the automatic stay does not apply to a Third Party Debtor Disclosure Request, relief under section 105(a) of the Bankruptcy Code is warranted to protect estate assets.

103.     Without an injunction staying Third Party Debtor Disclosure Requests, the Affiliated Debtors' estates will be irreparably harmed.  The information subject to such requests constitute property of the estate and may contain sensitive personally identifiable information about ITT's former students, and as such, their distribution must be protected and controlled in order to safeguard that information.  The non-debtors will suffer little if any harm since they will retain their rights to (i) seek relief from the stay in accordance with applicable provisions of the Bankruptcy Code, and (ii) investigate and liquidate their claims through the chapter 7 process. Application of the stay furthers the public policy of protecting sensitive personally identifiable information that the Trustee is entrusted with safeguarding.

## **COUNT IV**

(Declaratory Judgment Applying Automatic Stay to D&O Actions)

104.     The Trustee restates and realleges the allegations contained in paragraphs 1 through 103 above, as if fully set forth herein.

105.    The Trustee seeks an order staying the D&O Actions pursuant to section 362(a)(3) of the Bankruptcy Code as such actions seek to obtain possession of property of the Affiliated Debtors' estates or acts to exercise control over property of these estates.

106.    Continuation of the D&O Actions against Non-Debtor Insiders could deplete the D&O Policy coverage that is an asset of the Affiliated Debtors' estates.

107.    Continuation of the D&O Actions would expose the Affiliated Debtors' estates to indemnification claims by the Non-Debtor Insiders, further jeopardizing property of the Affiliated Debtors' estates.

108.    Continuation of the D&O Actions against Non-Debtor Insiders would expose the Trustee to burdensome discovery obligations that would distract from the liquidation process and from focusing her attention to fulfilling her statutory duties.

109.    Based on the foregoing, the Trustee seeks a declaratory judgment that the automatic stay under section 362(a)(3) of the Bankruptcy Code applies to the D&O Actions against the Non-Debtor Insiders.

## COUNT V

(Injunctive Relief Extending Automatic Stay to the D&O Actions)

110.    The Trustee restates and realleges the allegations contained in paragraphs 1 through 109 above, as if fully set forth herein.

111.    The Trustee seeks a preliminary and permanent judgment staying the continuation of the D&O Actions through the date these chapter 7 cases are closed, pursuant to sections 105(a) and 362 of the Bankruptcy Code.

112.    The Court should apply section 105 of the Bankruptcy Code to enjoin the continuation of the D&O Actions against the Non-Debtor Insiders because the continuation of the D&O Actions will jeopardize the Trustee's efforts to successfully marshal, protect, and

24

liquidate the assets of these estates and will interfere with the property of the Affiliated Debtors'
chapter 7 cases.

113.    The likelihood of irreparable harm to the Trustee in the absence of injunctive
relief far outweighs any harm to the parties in the D&O Actions as the parties will retain their
rights to seek relief from the stay in accordance with applicable provisions of the Bankruptcy
Code.

114.    If the D&O Actions against Non-Debtor Insiders are not enjoined, the Trustee
will likely suffer irreparable harm and the liquidation process will be threatened, including:

(i)    The risk that claims against the Non-Debtor Insiders, which constitute
property of the estate, are impaired on account of adjudicating the same or
similar claims outside of the bankruptcy court for the benefit of particular
creditors rather than the estates as a whole, and are adjudicated prior to the
Trustee's ability to analyze the merits of any such claims and the possible
preclusive effect that a non-bankruptcy court's ruling could have on such
estate claims;

(ii)    The risk that the D&O Actions will result in a depletion of insurance
policies and proceeds that are assets of the Affiliated Debtors' estates;

(iii)    The risk that the D&O Actions will expose the Affiliated Debtors' estates
to indemnification claims by the Non-Debtor Insiders, further jeopardizing
property of the Affiliated Debtors' estates; and

(iv)    The risk that the D&O Actions will expose the Trustee to burdensome
discovery obligations that would distract from fulfilling her statutory
duties.

115.    There is a substantial likelihood that the Trustee will be able to successfully
marshal and liquidate the Affiliated Debtors' assets in an efficient manner that yields a recovery
for creditors if the D&O Actions are enjoined.

116.    The injunctive relief requested herein will serve the public interest by promoting
compliance with the Congressional purpose of the automatic stay by protecting the property of

the estates from piecemeal dissipation and by providing the Trustee with a breathing spell to assess, marshal, and liquidate the Affiliated Debtors' assets.

117.    Based on the foregoing, the Trustee seeks an injunction under sections 105 and 362 of the Bankruptcy Code to enjoin the continuation of the D&O Actions against Non-Debtor Insiders.

## PRAYER FOR RELIEF

**WHEREFORE**, the Trustee demands judgment against the Defendants and request the following relief:

(a)     The entry of a declaratory judgment that the continuation of the Government Actions against the Affiliated Debtors is stayed under Bankruptcy Code section 362, including sections 362(a)(1), 362(a)(3), and/or 362(a)(6); and/or

(b)     In the alternative, the entry of a judgment granting an injunction pursuant to Bankruptcy Code sections 105(a), 362, 541, and/or 704 to stay or enjoin the Government Actions through the date these chapter 7 cases are closed; and/or

(c)     The entry of a judgment  preventing any person, including any Government Actor, from responding to any Third Party Debtor Disclosure Requests during the pendency of any stay applicable to any Affiliated Debtors' estate; and/or

(d)     The entry of a declaratory judgment that the continuation of the D&O Actions against the Non-Debtor Insiders is stayed under Bankruptcy Code section 362; and/or

(e)     In the alternative, the entry of a judgment granting an injunction pursuant to Bankruptcy Code sections 105(a) and 362 to stay or enjoin the D&O Actions through the date these chapter 7 cases are closed; and/or

(f)     Such other relief as this Court deems just and proper under the circumstances.

Dated: October 10, 2016
        Indianapolis, Indiana

Jeff J. Marwil (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Three First National Plaza, Suite 3800
Chicago, Illinois 60602-4342
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

Timothy Q. Karcher (admitted *pro hac vice*)
Jared D. Zajac
Julia D. Alonzo
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

Respectfully submitted,

*/s/*John C. Hoard

Deborah J. Caruso (Atty. No. 4273-49)
John C. Hoard (Atty. No. 8024-49)
James E. Rossow Jr. (Atty. No. 21063-29)
Meredith R. Theisen (Atty. No. 28804-49)
**RUBIN & LEVIN, P.C.**
135 N. Pennsylvania Street, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 634-0300
Facsimile: (317) 263-9411

*Proposed co-counsel to the Trustee*

27