**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: | Chapter 7 |
| ITT EDUCATIONAL SERVICES, INC., *et al.*, [1] | Case No. 16-07207-JMC-7A |
| Debtors. | **Jointly Administered** |
| DEBORAH J. CARUSO, TRUSTEE FOR ITT EDUCATIONAL SERVICES, INC., *et al.*, | Chapter 7 |
| Plaintiff, | Adversary Proceeding No. 16-50318 |
| -against- | |
| SECURITIES AND EXCHANGE COMMISSION, CONSUMER FINANCIAL PROTECTION BUREAU, MAURA T. HEALEY, in her capacity as the Attorney General of the Commonwealth of Massachusetts, HECTOR H. BALDERAS, JR., in his capacity as the Attorney General of the State of New Mexico, TERRI L. BURTON, RAYMOND BRINEY, RODFORD SEABOLT, DALISHA K. ALDRIDGE, KAYLA SCIFRES, THERESA WINTERS, NICOLE AKERLEY, and JOHN/JANE DOES 1-10. | |
| Defendants. | |

**TRUSTEE'S MOTION TO STAY, OR IN THE ALTERNATIVE,**
**FOR INJUNCTIVE RELIEF ENJOINING, PROSECUTION OF PENDING**
**LITIGATION AGAINST DEBTORS**

Deborah J. Caruso, the chapter 7 trustee in the above-captioned case (the "<u>Trustee</u>"), has

filed the attached complaint (the "<u>Complaint</u>") seeking (i) a declaration that the automatic stay

pursuant to 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") applies to stay or

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers, are ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].

enjoin the continued prosecution of four Government Actions (as defined below) asserted against the Affiliated Debtors (as defined below) by various state and federal governmental entities, or (ii) in the alternative, an injunction against continuation of the Actions (as defined below) for one hundred twenty (120) days from the Petition Date (as defined below), pursuant to sections 105(a), 362(a), 541, and 704 of the Bankruptcy Code, subject to the rights of all parties to seek extensions to the stay, all as more fully set forth in the Complaint.  On an immediate basis, in accordance with sections 105, 541, and 704 of the Bankruptcy Code, Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule B-7065-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules") and for the reasons set forth (i) herein, (ii) in the Complaint, and (iii) in the accompanying declaration of Deborah J. Caruso (the "Caruso Declaration"), filed contemporaneous herewith, the Trustee seeks an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") extending the automatic stay to cover or, in the alternative, a preliminary injunction staying, any further prosecution of the Government Actions and the D&O Actions, including discovery, document requests, or similar action in connection with, or related to, the Actions, until such time as a more fulsome hearing can be held  in connection with the relief sought in the Complaint.  In support of this motion, the Trustee respectfully states as follows:

**STATEMENT OF FACTS**

## I.      The Debtors' Business.

1.      ITT Education Services ("ITT") is a publicly traded Delaware corporation.  Prior to filing for bankruptcy protection on September 16, 2016 (the "Petition Date"), with ESI Service Corp. and Daniel Webster College, Inc. (collectively, the "Affiliated Debtors"), ITT was a leading proprietary provider of postsecondary degree programs in the United States.

2.      As of June 30, 2016, the Affiliated Debtors offered (a) master, bachelor, and associate degree programs to approximately 40,000 students; and (b) short-term technology and business learning solutions to career advancers and other professionals through ITT's Center for Professional Development.

3.      As of June 30, 2016, the Affiliated Debtors had 137 campus locations in 39 states. In addition, the Affiliated Debtors offered one or more of their online programs to students located in all 50 states and the District of Columbia.  All of their campus locations were authorized by the applicable education authorities of the states in which they operate, and were accredited by an accrediting commission recognized by the U.S. Department of Education (the "DOE").

## II.     Actions Brought Against the Affiliated Debtors and/or their Directors and Officers.

4.      Prior to the Petition Date, ITT received civil investigative demands from federal and state judicial and regulatory entities, including the Department of Justice (the "DOJ"), the Consumer Financial Protection Bureau (the "CFPB"), and the Attorneys General of Arkansas, Arizona, Colorado, Connecticut, the District of Columbia, Hawaii, Idaho, Iowa, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Carolina, Oregon, Pennsylvania, Tennessee, and Washington.  These CIDs contain broad requests for information and production of documents relating to ITT's students and practices.

5.      On February 26, 2014, the CFPB filed a complaint against ITT in the United States District Court for the Southern District of Indiana, styled *Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, 1:14-cv-00292 (the "CFPB Action").  The CFPB Action asserts that ITT violated the Consumer Financial Protection Act and the Truth in Lending

Act in connection with its private education loan programs.[2]  The CFPB action against ITT seeks

equitable relief, restitution to affected consumers, injunctive relief, disgorgement, rescission,

civil penalties, and costs.

6.     On March 6, 2015, the court overseeing the CFPB Action issued an order granting

ITT's motion to dismiss as to the Truth in Lending Act claim, but denied the motion as to all

other claims.  The Seventh Circuit denied ITT's appeal of the motion to dismiss decision on June

13, 2016.  The CFPB Action is currently in the discovery phase, and trial is set for January 22,

2018.  On October 3, 2016, following a telephonic status conference in the CFPB Action, United

States Magistrate Judge for the Southern District of Indiana Tim A. Baker ordered that "[T]he

parties shall file a status report promptly after the bankruptcy trustee makes a determination as to

whether the ITT estate will continue to defend this lawsuit.  No motions to compel shall be filed

prior to November 2, 2016, and counsel is encouraged to contact the Magistrate Judge to help

narrow/resolve any discovery dispute prior to filing any motion to compel."

7.     On February 27, 2014, the New Mexico Attorney General filed a complaint

against ITT in the District Court of New Mexico, styled as *State of New Mexico, ex rel. Gary K.*

*King, Attorney General v. ITT Educational Services, Inc., et al*, D-202-CV-2014-01604 (the

"New Mexico Action").  The New Mexico Action seeks:

- declaratory relief that ITT's arbitration agreements with students are not enforceable;

- preliminary and permanent injunctive relief prohibiting ITT from enforcing illusory or unconscionable terms of any agreement or entering into new agreements with consumers, or engaging in conduct that violates New Mexico's Unfair Practices Act or other law;

- disgorgement under an unjust enrichment theory;

---

[2] True and correct copies of the complaints identified in paragraphs 5 through 9 are attached as Exhibits A through D to the Caruso Declaration.

- civil penalties of $5,000/violation under the Unfair Practices Act;

- restitution under the Unfair Practices Act; and

- civil penalties of $500/day for violations under New Mexico Post-Secondary Educational Institution Act.

8. On December 8, 2015, the court overseeing the New Mexico Action denied ITT's motion to dismiss the New Mexico Action. The New Mexico Action is currently in the discovery phase. In addition, certain rulings in the New Mexico Action are currently on appeal.

9. On May 12, 2015, the Securities and Exchange Commission (the "SEC") filed a civil enforcement action against ITT, as well as its former chief executive officer and its former chief financial officer (collectively, the "Non-Debtor Insiders") in the United States District Court for the Southern District of Indiana, styled as *United States Securities and Exchange Commission v. ITT Educational Services, Inc., et al.*, 1:15-cv-00758 (the "SEC Action" and, collectively with the CFPB Action, the "Government Actions"). The SEC Action involves ITT's disclosures regarding its private education loan programs, and it asserts claims under Sections 10(b), 13(a) and 13(b)(2) of the Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-1, 13a-11 and 13a-13 promulgated thereunder, as well as Section 17(a) of the Securities Act. The SEC Action seeks:

- declaratory relief that ITT and the Non-Debtor Insiders committed the securities violations alleged in the complaint;

- injunctive relief permanently restraining ITT and the Non-Debtor Insiders from violating the federal securities laws;

- an order that the Non-Debtor Insiders be permanently prohibited from acting as an officer or director of any public company;

- disgorgement from ITT and the Non-Debtor Insiders of any ill-gotten gains derived from the alleged securities-law violations, with pre- and post-judgment interest;

- disgorgement of the Non-Debtor Insiders' bonuses, incentive-based and equity-based compensation, and/or profits realized from their sale of ITT stock; and

- civil money penalties, with post-judgment interest.

10. On July 17, 2015, ITT filed an answer to the complaint in the SEC Action, and the case is now in the discovery phase. A trial is scheduled for October 16, 2017.

11. On March 31, 2016, the Commonwealth of Massachusetts (together with the State of New Mexico, the "State Actors" and, together with the CFPB and SEC, the "Government Actors") filed a complaint against ITT, styled *Commonwealth of Massachusetts v. ITT Educational Services, Inc.*, Sup. Ct. 16-04111 (the "Massachusetts Action" and, together with the New Mexico Action, the "State Actions"). The Massachusetts Action seeks:

- injunctive relief prohibiting ITT from: (i) making false/misleading representations regarding, or failing to disclose material information regarding, job placement rates, earnings/opportunities available to students/graduates, nature of its educational programs, and financial aid, and (ii) steering private loans to student borrowers;

- restitution to all current and former Computer Network Systems program students (including tuition); and

- civil penalties of $5,000/violation.

12. ITT filed a motion to dismiss the Massachusetts Action on July 22, 2016, and the matter is fully briefed.

13. The Government Actions are currently pending; none have been administratively closed as of the Petition Date.

**III. The Affiliated Debtors' D&O Insurance Policies.**

14. The Affiliated Debtors carry the following four liability insurance policies that provide coverage for the Affiliated Debtors and their directors and officers for certain actions brought against them (collectively, the "D&O Policies"): Federal Insurance Company Executive

6

Protection Portfolio Policy [Policy No. 8153-1288], which carries a $15 million yearly limit; (b) the Illinois National Insurance Company Excess Edge Policy [Policy No. 01-245-61-65], which carries a $10 million yearly limit; (c) the XL Specialty Insurance Company Cornerstone A-Side Management Liability Policy [Policy No. ELU143403-16], which carries a $10 million yearly limit; and (d) the Freedom Specialty Insurance Company Excess Policy [Policy No. XMF1602247], which carries a $5 million yearly limit.[3]

15.    Of the aggregate $40 million in coverage provided by the D&O Policies, $25 million is available to the Affiliated Debtors directly for liability associated with securities claims and any indemnity the Affiliated Debtors pay to or for the benefit of directors and officers.

16.    Any claim against the D&O Policies that is paid decreases the remaining coverage available to all insureds, including the Affiliated Debtors.  In other words, if the D&O Policies pay for defense costs in an action against a director, such paid amounts decrease the overall amount under the policy available to the Affiliated Debtors, even if they were entirely uninvolved in the action.

## IV.    Suits Brought Against the Non-Debtor Insiders

17.    Two lawsuits are pending against the Non-Debtor Insiders.  First, as noted above, the SEC named ITT's former chief executive officer and ITT's former chief financial officer as defendants in the SEC Action, and seeks declaratory and injunctive relief against them.

18.    Second, in 2013, certain private individuals brought suit against ITT in the Kentucky Court of Justice, styled *Burton, et al. v. ITT Educational Services, Inc., et al.*, assigned case number 13-CI-004839 (the "Kentucky Action," together with the SEC Action, the "D&O

_____

[3] True and correct copies of the D&O Policies are attached as Exhibits F through I to the Caruso Declaration.

Actions," and, together with the Government Actions, the "Actions").  The Kentucky Action asserts claims of fraud, negligence, breach of contract, violation of Kentucky consumer protection law, unjust enrichment, and violations of Kentucky nursing regulations.[4]  The Kentucky Action has been expanded to include claims against ITT's former chief executive officer, who is covered under one or more of the D&O Policies, and four other employees who may or may not have insurance.  The defendants' motion to compel arbitration is currently pending.

## V.    The Bankruptcy Cases

19.    In August of 2016, the DOE prohibited ITT from enrolling new students using federal financial aid funds.  Shortly thereafter, the Debtors' prepetition secured lender froze the Debtors' access to funding.  The Debtors attempted to consensually resolve the dispute with their lender and the regulators but were unsuccessful.  Without access to cash, the Debtors faced a severe liquidity crisis.

20.    The Debtors announced on September 6, 2016, that they would permanently discontinue academic operations.

21.    On September 7, 2016, the Debtors' secured lender swept $16 million that remained in the Debtors' accounts.  Without any immediate source of funding, the Debtors filed their chapter 7 cases.

22.    On the Petition Date, the Debtors each filed with the United States Bankruptcy Court for the Southern District of Indiana (the "Court") voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  On October 4, 2016, the Court ordered the joint administration of the Debtors' cases for procedural purposes.

---

[4] A true and correct copy of the amended complaint in the Kentucky Action is attached as Exhibit E to the Caruso Declaration.

23.     Since the Affiliated Debtors filed their petitions, the State Actors, the CFPB, and the SEC have each filed notices of appearance with the Court.

24.     On the Petition Date, the Trustee was appointed as the chapter 7 trustee in each of the Affiliated Debtors' cases pursuant to section 701(a)(1) of the Bankruptcy Code.

25.     The Trustee and her team of professionals are systematically assembling and analyzing the Affiliated Debtors' records in an effort to locate the Affiliated Debtors' assets and liabilities so that the Trustee can expeditiously carry out her duties.  This process is complicated as the Debtors have assets located in at least 37 states, and books and records (including student records) located throughout the country, and complicated insurance, employee, and tax obligations.

26.     The Trustee is in the process of recovering all of the Debtors' computer servers and preserving and recovering all of the Affiliated Debtors' documents, including student transcripts, financial aid information, medical records, and other documents, some of which may contain sensitive personally identifiable information.  The Trustee is also in the process of identifying a database vendor to image and catalogue the documents.  As reported to the Court, Parchment, Inc. ("Parchment") was retained prior to the Petition Date to image all student transcripts from 2001 to the present, and will provide access to students upon request at Parchment's website within 7-10 days of receiving such documents.  Parchment's work is ongoing. [*See* ECF No. 173]  Further, the Trustee is considering establishing a database, accessible to all parties in interest (subject to applicable privacy and privilege concerns), which will be searchable, and will be centralized depository for all of the Affiliated Debtors' documents.

27.     Much progress has been made, but the foregoing represents only a fraction of the tasks and issues that the Trustee faces.  The Trustee's compilation of student records is particularly difficult, as it involves accumulating data from ITT's central database plus data housed on ITT's servers in at least 139 locations.

28.     In addition, the Trustee is attempting to create a protocol for addressing the Affiliated Debtors' accounts receivable.  Many of ITT's former students had public and/or private educational loans to finance their tuition, and repayment of those loans is ongoing.  The Trustee is in the process of evaluating the various loan programs in which ITT participated (including the PEAKS, CUSO, and other private loan programs).  The receivables will be held in a designated, segregated Trustee account.  Additionally, the Trustee is working to identify and retain a loan servicer to keep track for all incoming accounts receivable and outstanding student loan balances. [5]

29.     On September 23, 2016, the State Actors filed a motion (the "Stay Application Motion") in the Debtors' cases for a determination that the automatic stay, as provided in § 362(a) of the Bankruptcy Code, does not apply to the States' Actions under § 362(b)(4).  [ECF No. 72]  The Trustee filed an objection to this motion on September 30, 2016 (the "Objection").  [ECF No. 189]

30.     The Court held a status conference on September 28, 2016.  At that conference, the Court inquired about the status of certain pending actions against the Debtors, notably the CFPB Action.  The Office of the Attorney General of the State of Illinois reported that the CFPB Action is ongoing, that it concerns ITT's private educational loan programs, and that the

---

[5] Prior to the Petition Date, the Debtors used UAS as their servicer. UAS is continuing to receive payments and will turn them over to the Trustee, who will hold them in a segregated Trustee account.  The Trustee will or may seek authority to retain UAS.

outcome of the CFPB Action may affect ITT's accounts receivable.  The Trustee, by and through her counsel, discussed the pending nature of the Actions, and her plans to undergo the various organizational efforts described above.

31.     At a hearing held on October 4, 2016, the Court declined to grant the relief requested in the Stay Application Motion, without prejudice to the State Actors' right to file additional pleadings on the merits or to request narrower relief.[6]

## VI.     The FOIA Request.

32.     On September 30, 2016, the Trustee received notice that a news organization filed a FOIA request against the CFPB seeking certain documents from the CFPB (the "FOIA Request").  Counsel to the CFPB, recognizing that documents responsive to the FOIA Request would include ITT's communications with the CFPB (including materials produced to the CFPB identified with a request that such production be excluded from any FOIA request), notified counsel to ITT in the CFPB Action, who forwarded the information to the Trustee.  The CFPB has not made clear to the Trustee how it intends to respond to the FOIA Request.  While the Trustee has not had time to evaluate and review the contents of this threatened production, the Trustee believes such information constitutes property of these estates and has informed counsel to the CFPB that the Trustee objects to its release on the grounds that such release would violate the automatic stay.  ***This is exactly the type of action the Trustee seeks to enjoin until she can properly evaluate the pending Actions and estates.***

---

[6] In particular, the Court stated that it believed "pursuing claims for monetary recovery in the form of either restitution or the assertion of . . . monetary penalties . . . are stayed and that actions to pursue those types of claims are . . . violative of the stay."  Transcript of Oct. 4, 2016 Hrg., at 20.

**ARGUMENT**

**I.    A Preliminary Injunction Is Appropriate to Avoid Irreparable Harm**

33.    The filing of a petition creates an estate comprised of property in which the debtors hold a legal and/or equitable interest, wherever located and by whomever held.  *See* 11 U.S.C. § 541.  The Trustee is required, among other things, to "collect and reduce to money the property of the estate," "be accountable for all property received," and "investigate the financial affairs of the debtor."  11 U.S.C. §§704(1), (2), and (4).  The continuation of the Government Actions and the D&O Actions (including continued discovery) before the Trustee has had an opportunity to evaluate, analyze, and determine the scope and nature of the Actions (in which the debtors unquestionably have a legal and equitable interest, *See United States v Whiting Pools, Inc.* 462 U.S. 198 (1983)), threatens immediate and irreparable harm to the estates and leaves the Trustee with an inadequate remedy at law.

34.    Further, as set forth herein, the Trustee has a strong likelihood of success on the merits in the underlying Complaint: either the automatic stay *already* applies (and, respecting the Government Actions, the police and regulatory exception is inapplicable), or a temporary stay *should* apply to allow the Trustee to carry out her statutory duties to protect the interests of the estates and the public (and potentially private) interests of hundreds of thousands of former students and creditors in these chapter 7 cases.  Further, the balance of the hardships weighs heavily in favor of staying the Actions (most of which have been pending for years) while these chapter 7 cases, which are only a few weeks old, are stabilized.

35.    As set forth below, the factors that go into an analysis for a preliminary injunction warrant granting the relief the Trustee requests: those factors, (1) a likelihood of success on the merits, (2) a threat of irreparable harm, (3) an inadequate remedy at law, (4) balance of the hardships, and (5) impact on public interest, each weigh heavily in favor of the Trustee.  *See*

12

*Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007); *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (grant of preliminary injunction).

**II.     The Automatic Stay Applies to the Actions.**

**A.     The Government Actions Are Not Exempt From the Automatic Stay.**

36.     The automatic stay applies to the Actions.  The automatic stay is "one of the fundamental protections afforded to debtors by the bankruptcy laws." *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011).  The exception to the automatic stay provided for in § 362(b)(4) is limited to an "action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power."  11 U.S.C. § 362(b)(4).  This exception is narrowly construed in the Seventh Circuit.  *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 555 (7th Cir. 1985).

37.     Courts within this Circuit and elsewhere apply a two prong test to determine whether a governmental unit's action falls within the police power exception of section 362(b)(4) of the Bankruptcy Code: the "pecuniary test" and the "public policy" test.  *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014); *In re Edison Mission Energy*, 502 B.R. 830, 835 (Bankr. N.D. Ill. 2013).  The pecuniary test focuses on whether a governmental proceeding "relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not." *Edison Mission Energy*, 502 B.R. at 835 (*citing In re Phillips*, 368 B.R. 733, 739 (Bankr. N.D. Ind. 2007)).  The public policy test focuses on whether the action seeks to effectuate public policy or merely is being brought to adjudicate private rights. *In re Sori*, 513 B.R. at 734; *see also In re Go West Entertainment, Inc.*, 387 B.R. 435, 439 (Bankr. S.D.N.Y. 2008) ("[p]roceedings that only advance governmental fiscal interests or adjudicate private rights" do not trigger the police power exception).

38.     As explained in the Trustee's Objection, neither of the State Actions qualifies for the police power exception.  [Objection ¶¶ 28-35]  Rather than repeat these arguments here, the Trustee respectfully refers the Court to the Trustee's Objection for a complete discussion of why the State Actions fail to meet both the pecuniary and the public policy tests and incorporates such arguments by reference herein.

39.     The SEC and CFPB Actions are also subject to the automatic stay.  Like the State Actions, these actions seek injunctive relief against ITT.  Because the Debtors have ceased all operations and have virtually no remaining employees, any injunctive relief sought in these actions is rendered moot.  *See Enron Corp. v. California ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 537 (Bankr. S.D.N.Y. 2004) (request for injunction against non-operational company "meaningless"); *see also Bowles v. Montgomery*, 66 F. Supp. 889, 891 (W.D. Pa. 1946) (claim for injunctive relief abates following the death of the individual against whom it is sought).  Thus, as with the State Actions, the only reason to continue the CFPB or SEC Actions is to further the pecuniary interests of the CFPB or the SEC through seeking damages or disgorgement for past conduct.  [Objection at ¶¶ 30-31]

40.     Policy considerations also support a finding that the CFPB and SEC Actions are subject to the automatic stay.  The Trustee has already indicated that she intends to work with the CFPB, the SEC, and any other applicable regulatory bodies in addressing the claims asserted in their actions.  To that end, the Trustee is undertaking an enormous effort to understand ongoing student loan remittance and collections, including under the PEAKS and CUSO loan programs that are the basis for the SEC Action, and the other private loans that are at issue in the CFPB Action.  The Trustee also plans to establish an escrow account to hold and segregate all payments submitted by former students.

14

41.     Through these actions, the Trustee is clearly demonstrating that the bankruptcy court is not being used as a "haven for wrongdoers." *In re Berg*, 198 B.R. 557, 560 (9th Cir. BAP 1996). [Objection ¶¶ 32-35] Rather, she is fulfilling the requirements set out in § 704 of the Bankruptcy Code. 11 U.S.C. § 704 ("The trustee shall: collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest; be accountable for all property received; . . . investigate the financial affairs of the debtor; . . . [and] unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."). The Court would therefore more appropriately serve the public interest and protect the policies inherent in the Bankruptcy Code by granting the Trustee meaningful time to fully evaluate the Debtors' estates and then proceed in the most judicious way possible.

**B.     The Automatic Stay Applies to the D&O Actions.**

42.     The Affiliated Debtors and the Non-Debtor Insiders share common insurance policies (as defined above, the D&O Policies) that provide coverage for the D&O Actions. These shared Policies are property of the Debtors' estates pursuant to section 541(a)(1) of the Bankruptcy Code. *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("[P]olicy of insurance is an asset of the estate."); *In re Gladwell*, 2009 WL 140098, at *2 (Bankr. C.D. Ill. 2009) (same); *In re Allied Prods. Corp.*, 288 B.R. 533, 535-36 (Bankr. N.D. Ill. 2003) (same); *In re Rose Investments, Inc.*, 1996 WL 596328, at *5 (Bankr. N.D. Ill. 1996) (same). Because the automatic stay covers all actions that "obtain possession of property of the estate . . . or . . . exercise control over property of the estate," *see* 11 U.S.C. § 362(a)(3), all actions that could affect these D&O Policies are within the bounds of the automatic stay.

43.    The proceeds of these shared D&O Policies are similarly property of the Debtors'
estates. *See* 11 U.S.C. § 541(a)(6) (defining estate property to include "proceeds . . . of or from
property of the estate").  The critical question when determining whether insurance proceeds are
property of the estate is "whether the debtor would have a right to receive and keep those
proceeds when the insurer paid on a claim." *Gladwell*, 2009 WL 140098, at *2; *accord In re
Feher*, 202 B.R. 966, 970 (Bankr. S.D. Ill. 1996).  Where a policy provides benefits jointly to a
debtor and non-debtor, such that both have a "shared interest in any proceeds paid under the
policy, the proceeds constitute property of [the debtor]'s estate." *Feher*, 202 B.R. at 970, *accord
In re Forty-Eight Insulations, Inc.*, 54 B.R. 905, 908 (Bankr. N.D. Ill. 1985) ("[I]nsurance
policies and proceeds are property of the estate.").  Put another way, "[w]here a policy provides
both direct coverage to a company, and to its directors and officers, the proceeds will be property
of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent
the policy actually protects the estate's other assets from diminution." *Davis v. Connolly*, 2011
WL 1378875, at *1 (N.D. Ill. Apr. 12, 2011) (quoting *In re Allied Digital Techs., Corp.*, 306
B.R. 505, 512 (D. Del. 2004)).

44.    Allowing the D&O Actions to continue against the Non-Debtor Insiders will
undoubtedly reduce the proceeds available to the Debtors.  The shared insurance proceeds are
paid on a first-billed, first-paid basis.  If the D&O Policies pay for defense costs in an action
against a director, the cost of the defense decreases the amount under the Policies available to the
Debtors, even if they were entirely uninvolved in the Action.  Because payments on behalf of the
Non-Debtor Insiders, either for litigation costs or to satisfy a judgment in either of the D&O
Actions, will reduce the insurance proceeds available to the Debtors, the continued prosecution
of these actions will deplete an asset of the Debtors' estate.  This warrants staying the D&O

16

Actions pursuant to section 362(a)(3) of the Bankruptcy Code. *In re Quigley Co., Inc.*, 676 F.3d 45, 58 (2d Cir. 2012); *In re A.H. Robins Co., Inc.*, 788 F.2d 994, 1001-02 (4th Cir. 1986) (proceedings against non-debtors who qualify as additional insureds are stayed under section 362(a)(3)).

### III.   The Debtors Are Entitled to an Equitable Stay Under § 105.

45.     Separate and apart from a determination that the automatic stay applies to the Actions, the Court *should* temporarily enjoin their prosecution under §§ 105, 541, and 704 of the Bankruptcy Code. Doing so is well within this Court's authority ***as tacitly acknowledged by the State Actors in their own pleading*** (*See* State Actors' arguments in their *Stay Application* Motion  [ECF No. 72] where the State Actors cite to *Eddleman v. U.S. Dept. of Labor,* 923 F.2d 782, 786 (10th Cir. 1991) (quoting H.R. Rep. 95-595, 95th Cong., 2d Sess. 174) ("the bankruptcy court has ample additional power to prevent damage to the bankruptcy estate by such actions on a case by case basis"); they also rely on *In re Commerce Oil Co*., 847 F. 2d 291,  297 (6th Cir. 1988)("We do not agree with Commerce that requiring the debtor to use § 105 of protect the bankruptcy estate from state administrative proceedings imposes any unintended or undue burden on the estate"); and they also rely on *In re First Alliance Mortg. Co.,* 263 B.R. 99, 109 (9th Cir. BAP 2001) ("The bankruptcy court has other avenues to prevent general harm to the estate, *i.e.* its powers under §105(a) to 'issue any order, process, or judgment that is necessary or appropriated to carry out the provisions of this title.'"). A stay in accordance with this precedent will foster expeditious and just resolution of the estates, and does not harm the public interest.

### A.   The Bankruptcy Court Has Broad Authority to Issue Injunctive Relief Under § 105.

46.     Wholly apart from § 362(a), the Court should enjoin prosecution of the Actions under § 105(a) of the Bankruptcy Code. Section 105(a) authorizes this Court to "issue any order,

process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As the Seventh Circuit recently explained, § 105(a) "grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *In re Caesars Entertainment Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015). Further, this provision grants bankruptcy courts with broad authority to enjoin actions that threaten the "rehabilitative process whether in a liquidation or in a reorganization case." *In re Johns-Manville Corp.*, 40 B.R. 219, 226 (S.D.N.Y. 1984); *see also In re Creative Cuisine, Inc.*, 96 B.R. 144, 148 (Bankr. N.D. Ill. 1989) (finding § 105(a) injunctive power "does not vary depending on the chapter of Title 11 being utilized").

47.     The legislative history of the Bankruptcy Code emphasizes the broad extent of bankruptcy courts' equitable powers under this section. In drafting the current version of the Code, Congress referred to the "ample" powers that bankruptcy courts have "to prevent damage to the bankrupt estate by [actions that are exempt from the automatic stay] on a case-by-case basis." *Eddleman*, 923 F.2d 782, 786 (10th Cir. 1991) (quoting H.R. Rep. 95-595, 95th Cong., 2d Sess. 174).

48.     Importantly, the Government Actions are not outside the scope of the Court's § 105(a) authority even if the Court finds that they fit within the § 362(b)(4) exception. A lawsuit that is exempt from the automatic stay because it involves police powers may still be enjoined. *In re First Alliance Mortg. Co.*, 263 B.R. at 109 ("The bankruptcy court has other avenues to prevent general harm to the estate, *i.e.*, its powers under §105(a)."); *In re Commonwealth Cos., Inc.*, 913 F.2d 518, 527 (8th Cir. 1990). This is because, "in some individual situations, the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted." *Penn Terra Ltd.*

18

*v. Dep't of Env. Resources*, 733 F.2d 267, 273 (3d Cir. 1984); *see also N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir. 1985) ("[T]he bankruptcy court has the discretion and authority to enjoin federal regulatory proceedings under § 105 when those proceedings would threaten the debtor's estate."). In such circumstances, courts have issued injunctions to enjoin suits that would otherwise not be subject to the automatic stay. *See, e.g.*, *In re FiberTower Network Svcs. Corp.*, 482 B.R. 169, 181 (N.D. Tex. 2012); *In re W.R. Grace & Co.*, 412 B.R. 657 (D. Del. 2009).

49.     Recognizing that bankruptcy courts could enjoin the prosecution of regulatory actions, notwithstanding their exemption from the automatic stay, was critical to Congress's adoption of § 362(b)(4). Rather than providing a path for *all* government actions enforcing police powers to move forward, Congress "explicitly took note" that bankruptcy courts could stay such actions under § 105(a) when necessary to further the goals of the Bankruptcy Code. *Penn Terra*, 733 F.2d at 273 ("The effect of [a § 362(b)(4)] exception is not to make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay.") (quoting S. Rep. No. 95-989 at 51). Accordingly, even if the Actions are found to be exempt from the automatic stay under § 362(b)(4), "that does not preclude the court from issuing . . . injunctive relief." *FiberTower*, 482 B.R. at 181.

50.     Furthermore, bankruptcy courts have authority under § 105(a) to enjoin actions against non-debtors. Staying such actions is necessary if those "actions would interfere with, deplete or adversely affect property of a debtor's estate." *In re Gander Partners LLC*, 432 B.R. 781, 788 (Bankr. N.D. Ill. 2010); *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) ("The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect

19

the amount of property in the bankrupt estate or the allocation of property among creditors."). Accordingly, any claims against the Non-Debtor Insiders that would trigger payments under the D&O Policies, such as those asserted in the D&O Actions, may properly be stayed by an injunction under § 105.

> **B.    The Actions Will Interfere with the Property of the Estate and Threaten the Bankruptcy Code's Rehabilitative Process.**

51.    The key question in determining whether § 105(a) relief is warranted is whether the injunction sought is "likely to enhance the prospects for a successful resolution of the disputes attending its bankruptcy." *Caesars*, 808 F.3d at 1188. Courts also look to whether a stay is necessary in order to "protect the integrity of the bankrupt's estate." *FiberTower*, 482 B.R. at 181.

52.    Here, a § 105(a) injunction could not possibly be more appropriate. *First*, the Trustee is currently undertaking the herculean task of assessing all of the Debtors' assets, including educational and financial aid records of ***potentially hundreds of thousands of former students***. It is imperative that these student records do not fall into the hands of unauthorized third parties (such as landlords, or shippers, or other individuals), who will not or cannot protect the information – or may prevent or delay the Trustee from gaining access to the information. The documents could end up in the possession of one regulator, or such regulator's agent, who may not cooperate with the Trustee or other parties in interest. Many of these documents contain highly sensitive information, including financial, health, and personally identifiable data about ITT's former students, and as such, their distribution must be protected and controlled in order to safeguard that information. As discussed at the September 28, 2016 status conference, the Trustee is in the process of creating a protocol to streamline access to these records, including allowing necessary access by state and federal regulators. Any attempts to circumvent this

protocol could put the records, as well as the private information contained within them, at significant risk.

53.    *Second*, the Trustee is also involved in evaluating the pending claims against the Debtors, including the Actions.  As discussed above and in the Objection, the continuation of the Actions outside the bankruptcy will adversely affect the Debtors' property and thus imperil the Trustee's efforts.  For example, the private education loan payments that are the subject of the CFPB Action are ongoing, and any efforts taken pursuant to the CFPB Action could affect the Debtors' receivables.  The Trustee needs time to review the allegations made in the CFPB Action (and the other Actions) in order to determine how to best address the claims made therein. *Caesars*, 808 F.3d at 1189 (recognizing need for pending litigation to "be frozen for a time" in order to "provide the parties with the information they need to have a clear shot at negotiating an overall settlement").

54.    *Third*, and relatedly, the Trustee's efforts to evaluate the Debtors' accounts receivable – namely, student loan payments – must be protected in order to protect the integrity of the estates.  The Trustee is in the process of evaluating the treatment of student loan payments. If the Trustee cannot develop an understanding of these assets, the Debtors' creditors could face significant harm during the liquidation process.  However, continued prosecution of the Actions, especially because of the CFPB Action's focus on student loan payments, will have this exact effect.  *See Superior Forwarding*, 762 F.2d at 699 ("It is of particular importance that bankruptcy courts be able to determine factually, on a case by case basis, whether regulatory proceedings will threaten the assets of the estate because otherwise the court's power to preserve the estate over which it presides is illusory.").

55.     *Fourth,* the Trustee will face significant discovery burdens that will serve as distractions from her liquidation efforts.  The CFPB, SEC, and New Mexico Actions are in the discovery phase, and the plaintiffs in those actions have served multiple document requests on ITT, respectively.  The SEC Action and the CFPB Action are also set for jury trials, beginning October 16, 2017 and January 22, 2018, accordingly.  Complying with the discovery burdens in the Actions, as well as preparing for and attending status conferences and other pre-trial requirements in multiple fora throughout the United States, will necessarily impose on the Trustee's efforts to oversee the bankruptcy.

56.     *Fifth*, the continuation of the D&O Actions outside the bankruptcy will adversely affect the Debtors' property by means of impinging on the D&O Policies.  As discussed above, the D&O Policies and their proceeds are assets of the estates, and allowing the Actions to continue would deplete their assets.  Therefore, the stay should be extended to preclude continued prosecution of the D&O Actions pursuant to § 105(a).  *See, e.g.*, *In re IFC Credit Corp.*, 422 B.R. 659, 663 (Bankr. N.D. Ill. 2010) (staying litigation against non-debtors pursuant to § 105(a) because of risk to debtors' insurance policy proceeds).

57.     *Sixth*, the D&O Actions could create indemnification obligations for the Debtors.  ITT's bylaws provide its directors and officers – including the Non-Debtor Insiders – with broad indemnification rights for claims brought against them.  [ITT Bylaws, Article VII, Section 1[7]]  The claims asserted in the D&O Actions – violations of the federal securities laws in the SEC Action, and claims of fraud, negligence, breach of contract, violation of Kentucky consumer protection law, unjust enrichment, and violations of Kentucky nursing regulations in the Kentucky Action – trigger the indemnification obligations in ITT's bylaws.  Because they create

---

[7] A true and correct copy of ITT's bylaws, as amended and restated on July 18, 2011, are attached as Exhibit J to the Caruso Declaration.

direct indemnification claims against the Debtors' estate, the D&O Actions should be stated in order to protect the estate's property.

58.     *Seventh*, to the extent that any third parties seek information from the Government or State Actors regarding their communications with the Debtors, or documents that the Debtors turned over to them prior to the Petition Date, such requests would impermissibly threaten the property of the estate.  A request for information, such as through the Freedom of Information Act or one of its state-law equivalents, may be prohibited by means of a § 105(a) injunction. *Saint Vincent's Catholic Medical Centers of New York*, 449 B.R. 209, 218 (S.D.N.Y. 2011) (denying third party's state-law FOIA request for debtor's closure plans and related documents from state regulatory agency to whom debtor had provided such documents pre-petition).  A third party seeking this information is, effectively, "conducting discovery, the only practical purpose of which is to bring a case for fraud or recovery of assets, which . . . is prohibited . . . by bankruptcy law."  *Id.* at 216.

59.     Enjoining the continued prosecution of the Actions and any attempts to obtain information therefrom would address all of the above issues.  As noted, the Trustee is not attempting to use the Court's authority under § 105(a) to avoid the Debtors' regulators, or to escape any liability that may ultimately be found in the Actions.  Rather, this injunction would only provide a necessary "respite" or "breathing spell" that the Bankruptcy Code envisions for debtors that are still "adjusting to the trauma which accompanies the filing of a petition in bankruptcy."  *In re Colin, Hochstin Co.*, 41 B.R. 322, 325 (S.D.N.Y. 1984).  The issuance of an injunction would therefore allow the Trustee to develop a streamlined and comprehensive plan, work with the CFPB, the SEC, and the State Actors, and "facilitate a prompt and orderly wind-up of the bankruptcy."  *Caesars*, 808 F.3d at 1190.

C.      **The Remaining Requirements for Injunctive Relief Under Section 105 Are Present.**

60.      The additional elements necessary for a § 105(a) injunction in this Circuit – namely, the reasonable likelihood of success on the merits, the balance of harms between the debtor and the plaintiffs in the Actions, and a consideration of the potential harm to the public – are easily met here.[8]

61.      *First*, through her efforts to comprehensively evaluate the claims pending against the Debtors, the Trustee has demonstrated a reasonable likelihood of success on the merits.  By way of analogy, in chapter 11 cases, reasonable likelihood of success of the merits is based on whether there is a reasonable probability that a plan of reorganization will be confirmed. *Gander*, 432 B.R. at 788.  Applying these goals to the chapter 7 context, likelihood of success on the merits becomes dependent on the trustee's ability to successfully marshal the assets, conduct an orderly liquidation, and maximize value to creditors.  The Trustee's conduct in the short time since her appointment shows her intent to meet all of these goals; she has already engaged various vendors to assist with evaluating the estates' assets, and is working diligently to expeditiously prepare for liquidation.  Further, she is taking adequate precautions to ensure the creditors receive maximum value on their claims.  However, in order to successfully fulfill her statutory duties and liquidate the estates, the Trustee must be afforded sufficient time to review the estates' assets, and liabilities (including claims brought against the estates and/or its directors or officers).

62.      At least one court has held that, in the context of a suit against a debtor alleging non-dischargeability claims, the standard for determining a reasonable likelihood of success on

---

[8] In the Seventh Circuit, "[n]o demonstration of inadequate remedy or irreparable harm need to be shown."  *In re Lancelot Investors Fund, L.P.*, 408 B.R. 167, 174 (N.D. Ill. 2009) (citing *Fisher*, 155 F.3d at 882).

the merits in a chapter 7 bankruptcy is based on both "the possible success of the litigation which the debtor seeks to enjoin as well as the effect of that litigation on the debtor's fresh start." *Archambault v. Hershman*, 174 B.R. 923, 934 (Bankr. W.D. Mich. 1994). As to the possible success of the litigation that the Trustee wishes to enjoin, the Trustee has shown above that the continuation of the Actions violate the automatic stay. *FiberTower Network Svcs.*, 482 B.R. at 183 ("[P]robability of success means that the debtors are likely to succeed in *this* lawsuit, i.e. in this adversary proceeding."). Even if the Court finds that showing to fall short, at a minimum, the Trustee has raised sufficiently serious questions regarding the automatic stay's application sufficient for the issuance of a temporary injunction.

63. The second component of the *Archambault* test has been interpreted to require demonstrating a reasonable likelihood that the chapter 7 debtor "will be deprived of a fresh start *without a meaningful determination on the merits*" of the pending claims against him. *In re Eastburg*, 440 B.R. 864, 874 (Bankr. D.N.M. 2010) (emphasis added). While the Trustee is not seeking a "fresh start," without a careful consideration of the merits of the claims, the Trustee will be unable to fulfill her duties, and the purposes of the Bankruptcy Code will be frustrated. *See also Lancelot*, 408 B.R. at 174 (finding reasonable likelihood of success on the merits when there was "substantial overlap between the conduct that the Trustee is currently investigating and the conduct that forms the basis of [the] claims").

64. *Second*, a balance of the relative hardships faced by the Debtors and the Trustee on the one hand, and the Government Actors on the other, favors an injunction. The injunction sought by the Debtors in this adversary proceeding is merely a stay of one hundred twenty days from the Petition Date, in order to provide the Trustee with sufficient time to understand the assets and liabilities held by the estates. Any harm that the plaintiffs in the Actions may face as a

result of such a stay, therefore, is merely temporary.  Moreover, they retain their rights to file a motion to lift the stay should the circumstances warranting a stay at this stage of the bankruptcy cases change.  Conversely, the estates will be subjected to significant and irreparable harms should the Actions proceed, by distracting the Trustee from her statutory duties, subjecting the estates to inappropriate relief, and depleting the estates' assets through claims made pursuant to the D&O Policies.  This harm would spread beyond the Trustee to the creditors, as the price of defending these actions and the distraction that they would cause to the Trustee would make the cost of litigating the estate exponentially higher.  Moreover, this harm is heightened by the potential for inconsistent results from the varying courts that are currently adjudicating the Actions on the same or similar questions of law and fact.

65.     *Third*, an injunction will serve the public interest by furthering the goals of the Bankruptcy Code.  By ensuring that the Trustee is provided with the requisite breathing spell envisioned by the Bankruptcy Code, an injunction will ensure that the goals of the Bankruptcy Code – namely, the prompt and efficient liquidation of the estates while preserving maximum value for the creditors, are met.  Furthermore, an injunction promotes the public interest in judicial economy.  This Court is the only forum where all of the Government Actors have appeared and will have the opportunity to investigate and litigate their claims, and accordingly, their claims will and should be adjudicated or settled in this Court.  Providing a centralized location for the Trustee to address the claims asserted in all of the Actions promotes judicial economy, while requiring the Trustee to appear and litigate likely the same issues in at least four separate jurisdictions will harm the public interest.

66.     Lastly, even if the Court finds that the Government Actions relate to public safety and welfare under a § 362(b)(4) analysis, such a finding does not mean that the public interest

element of a § 105(a) injunction is not satisfied.  *See W.R. Grace*, 412 B.R. at 666.  Indeed, "timely resolution of the bankruptcy estate is also in the public interest," especially here, where the interests of tens of thousands of students are at stake.  *Id.*  The Trustee intends to work with the CFPB, SEC, and State Actors to determine how the Actions can be resolved through the bankruptcy process.  Accordingly, any public interests that are served by the Actions will not be harmed by issuing an injunction for the relief sought.

[*remainder of page intentionally blank*]

## CONCLUSION

For the reasons shown above, the Trustee respectfully requests that her motion to be granted.  The Trustee requests (a) an injunction staying the continued prosecution of the Actions for one hundred twenty days from the Petition Date, without reservation to the Trustee's right to seek an extension of this stay, (b) in the alternative, entry of a preliminary injunction enjoining the continued prosecution of the Actions until a more fulsome hearing can be held on the merits of the Complaint, and in connection with this injunction, the Government Actors are enjoined from responding to inquiries from third parties in connection with such Actions, including FOIA requests, and similar requests from third parties, including other regulators, and (c) such other and further relief as the Court deems appropriate.

Dated: October 10, 2016
      Indianapolis, Indiana

Respectfully submitted,

/s/ John C. Hoard

Jeff J. Marwil (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Three First National Plaza, Suite 3800
Chicago, Illinois 60602-4342
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

Timothy Q. Karcher (admitted *pro hac vice*)
Jared D. Zajac
Julia D. Alonzo
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

*Proposed co-counsel to the Trustee*

Deborah J. Caruso (Atty. No. 4273-49)
John C. Hoard (Atty. No. 8024-49)
James E. Rossow Jr. (Atty. No. 21063-29)
Meredith R. Theisen (Atty. No. 28804-49)
**RUBIN & LEVIN, P.C.**
135 N. Pennsylvania Street, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 634-0300
Facsimile: (317) 263-9411

*Proposed co-counsel to the Trustee*

## Exhibit A

[Proposed Order]

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:<br><br>ITT EDUCATIONAL SERVICES, INC., *et al.*, [1]<br><br>                           Debtors. | Chapter 7<br><br>Case No. 16-07207-JMC-7A<br><br>**Jointly Administered** |
| DEBORAH J. CARUSO, TRUSTEE FOR ITT EDUCATIONAL SERVICES, INC., *et al.*,<br><br>                          Plaintiff,<br><br>          -against-<br><br>SECURITIES AND EXCHANGE COMMISSION, CONSUMER FINANCIAL PROTECTION BUREAU, MAURA T. HEALEY, in her capacity as the Attorney General of the Commonwealth of Massachusetts, HECTOR H. BALDERAS, JR., in his capacity as the Attorney General of the State of New Mexico, TERRI L. BURTON, RAYMOND BRINEY, RODFORD SEABOLT, DALISHA K. ALDRIDGE, KAYLA SCIFRES, THERESA WINTERS, NICOLE AKERLEY, and JOHN/JANE DOES 1-10.<br><br>                          Defendants. | Chapter 7<br><br>Adversary Proceeding No. _____ |

# ORDER GRANTING TRUSTEE'S MOTION TO STAY, OR IN THE ALTERNATIVE, FOR INJUNCTIVE RELIEF ENJOINING, <u>PROSECUTION OF PENDING LITIGATION AGAINST DEBTORS</u>

Upon the *Trustee's Motion to Stay, or in the Alternative, for Injunctive Relief Enjoining,*

*Prosecution of Pending Litigation Against Debtors* [ECF No. __] (the "<u>Motion</u>") [2] seeking,

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers, are ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Motion.

among other things, a preliminary injunction staying and enjoining the Actions pending against

the Affiliated Debtors and/or the Non-Debtor Insiders, as applicable, as more fully set forth in

the Motion; and upon consideration of the *Declaration of Trustee Deborah J. Caruso in Support*

*of Her Motion to Stay, or in the Alternative, for Injunctive Relief Enjoining, Prosecution of*

*Pending Litigation Against Debtors* [ECF No. ___] (the "Caruso Declaration"); and the Court

having subject matter jurisdiction to consider the Motion and to grant the relief requested therein

in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue of these chapter 7

cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and a

hearing to consider the Motion having been conducted by the Court (the "Hearing"); and the

Court having found the Trustee's notice to the parties identified in the Motion provided

appropriate notice of the Motion and the opportunity to be heard under the circumstances; and

upon the Motion, the Caruso Declaration, and all representations made at the Hearing; and the

Court having determined the relief requested in the Motion is in the best interests of the Trustee,

the Affiliated Debtors, their estates, their creditors, and all other parties in interest; and the Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before this

Court; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED AS FOLLOWS:

        1.      The Motion is GRANTED.

        2.      The Actions are hereby stayed in their entirety pursuant to sections 105(a)

and 362 of the Bankruptcy Code through and including January 14, 2017; *provided*, *however*,

that nothing herein prejudices the Trustee's right to seek a further extension of the stay.

2

3.       All persons, including any Government Actor, are stayed from responding to any Third Party Debtor Disclosure Request during the pendency of the stay of the Actions.

4.       This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order and this proceeding.

Dated: _____, 2016
        Indianapolis, Indiana


_____
Honorable James M. Carr
United States Bankruptcy Judge

3

61945499v11